## THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| DOMINQUE MOON, Surviving Spouse of Nicholas Moon, Deceased, on behalf of all Wrongful Death Heirs | Case No.: _____ |
| And | |
| BRIAN BINA, Administrator of the Estate of Nicholas Moon, Deceased, | |
| Plaintiffs, | |
| v. | |
| TEVA PHARMACEUTICAL INDUSTRIES LTD.; TEVA PHARMACEUTICALS USA, INC.; ALLERGAN PLC f/k/a ACTAVIS PLC f/k/a ALLERGAN, INC.; ALLERGAN FINANCE, LLC, f/k/a ACTAVIS, INC., f/k/a WATSON PHARMACEUTICALS, INC.; ALLERGAN SALES, LLC; ALLERGAN USA, INC.; WATSON LABORATORIES, INC.; WARNER CHILCOTT COMPANY, LLC; ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA INC.; ACTAVIS SOUTH ATLANTIC LLC; ACTAVIS ELIZABETH LLC; ACTAVIS TOTOWA LLC; ACTAVIS LLC; ACTAVIS LABORATORIES UT, INC., f/k/a WATSON LABORATORIES, INC. – SALT LAKE CITY; ACTAVIS LABORATORIES FL, INC., f/k/a WATSON LABORATORIES, INC. – FLORIDA | **COMPLAINT** |
| | **JURY TRIAL DEMANDED AND ENDORSED HEREON** |
| Defendants. | |

Plaintiffs Dominque Moon, Surviving Spouse of Nicholas Moon, Deceased, on behalf of all Wrongful Death Heirs and Brian Bina, Administrator of the Estate of Nicholas Moon, Deceased, by and through counsel, and for their Petition for Damages, state and allege as follows:

1

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Dominque Moon is a surviving heir and spouse of decedent Nicholas Moon and is a proper party to bring wrongful death claims on behalf of the wrongful death heirs.   Plaintiff Dominque Moon is a resident of Excelsior Springs, Missouri.

2.      Plaintiff Brian Bina is Administrator of the estate of Nicholas Moon, Deceased and is the proper party to bring survival claims on behalf of the estate.  Plaintiff Bina is a resident of Kansas.

3.      Decedent Nicholas Moon (hereinafter "Nick Moon") died with a wife and one minor son.  He was a resident of Kansas at the time of his death and his estate is a Resident Estate of the State of Kansas.

4.      Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business in North Wales, Pennsylvania.  Teva USA was in the business of selling generic opioids, including a generic form of OxyContin from 2005 to 2009.  Teva USA is a wholly owned subsidiary of Defendant Teva Pharmaceutical Industries, Ltd. ("Teva Ltd."), an Israeli corporation (collectively "Teva").

5.      Defendant Allergan plc (f/k/a Actavtis plc, f/k/a Allergan, Inc.) - is a public limited company incorporated in Ireland with its principal place of business in Dublin, Ireland, and its administrative headquarters and all executive officers located in Madison, New Jersey.  In October 2012, the Actavis Group was acquired by Watson Pharmaceuticals, Inc., and the combined company changed its name to Actavis, Inc. as of January 2013, and then to Actavis plc in October 2013.  In October 2013, Actavis plc (n/k/a Allergan plc) acquired Warner Chilcott plc pursuant to a transaction agreement dated May 19, 2013.  Actavis plc (n/k/a Allergan plc) was established to facilitate the business combination between Actavis, Inc. (n/k/a Allergan Finance, LLC) and Warner Chilcott plc. Following the consummation of the October 1, 2013 acquisition, Actavis, Inc. (n/k/a Allergan

Finance, LLC Inc.) and Warner Chilcott plc became wholly-owned subsidiaries of Actavis plc (n/k/a Allergan plc).  Pursuant to the transaction, each of Actavis, Inc.'s common shares were converted into one Actavis plc share.  Further,  Actavis plc (n/k/a Allergan plc) was the "successor issuer" to Actavis, Inc. and Warner Chilcott.  Actavis plc acquired Allergan, Inc. in March 2015, and the combined company thereafter changed its name to Allergan plc in January 2013.

6.     Defendant Allergan Finance, LLC (f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.) is a limited liability company incorporated in Nevada and headquartered in Madison, New Jersey.  Allergan Finance, LLC is a wholly-owned subsidiary of defendant Allergan plc.  In 2008, Actavis, Inc. (n/k/a Allergan Finance, LLC), acquired the opioid Kadian through its subsidiary, Actavis Elizabeth LLC, which had been the contract manufacturer of Kadian since 2005.  Since 2008, Kadian's label has identified the following entities as the manufacturer or distributor of Kadian: Actavis Elizabeth LLC, Actavis Kadian LLC, Actavis Pharma, Inc., and Allergan USA, Inc. Currently, Allergan USA, Inc. is contracted with UPS SCS, Inc. to distribute Kadian on its behalf.

7.     Defendant Allergan Sales, LLC is incorporated in Delaware and headquartered in Irvine, California.  Allergan Sales, LLC is the current New Drug Application ("NDA") holder for Kadian, and in 2016, Allergan Sales, LLC held the Abbreviated New Drug Applications ("ANDAs") for Norco.[1]  Allergan Sales, LLC is the wholly-owned subsidiary of Allergan plc.

8.     Defendant Allergan USA, Inc. is incorporated in Delaware and headquartered in Madison, New Jersey.  Allergan USA, Inc. is currently responsible for Norco and Kadian sales.  Allergan USA, Inc. is a wholly-owned subsidiary of Allergan plc.

9.     Defendant Watson Laboratories, Inc. is a Nevada corporation with its principal place of

---

[1]     The Norco ANDAs are currently held by Allergan Pharmaceuticals International Limited, which is incorporated in Ireland.

business in Corona, California, Watson Laboratories, Inc. was sold to Teva Pharmaceutical Industries Ltd. As part of Allergan plc's 2016 sale of its generic business to Teva.  .  Prior to the sale, Watson Laboratories, Inc. was a direct subsidiary of Actavis, Inc., (n/ka/ Allergan Finance, LLC). Betweem 2000 and 2015, Watson Laboratories, Inc. held the ANDAs for Norco and was the manufacturer of the drug.  Watson Laboratories, Inc. was also the ANDA holder of various generic opioids.

10.    Defendant Warner Chilcott Company, LLC is a limited liability company incorporated in Puerto Rico.  Since 2015, Warner Chilcott Company, LLC has been the manufacturer of Norco. Warner Chilcott Company, LLC was a subsidiary of Warner Chilcott plc until Warner Chilcott plc became a wholly owned subsidiary of Allergan plc in 2013.  Warner Chilcott Company LLC was sold to Teva Pharmaceutical Industries Ltd. as part of Allergan plc's 2016 sale of its generic businesses to Teva.

11.    Defendant Actavis Pharma, Inc. (f/k/a Watson Phrama, Inc.) is registered to do business with the Ohio Secretary of State as a Delaware corporation with its principal place of business in New Jersey.  Actavis Pharma, Inc. (f/k/a Watson Pharma, Inc.) was previously responsible for sales of Kadian and Norco.  Actavis Pharma, Inc. was sold to Teva Pharmaceutical Industries Ltd. as part of Allergan plc's 2016 sale of its generic businesses to Teva.

12.    Defendant Actavis Elizabeth LLC is a Delaware limited liability company with its principal place of business in Elizabeth, New Jersey.  From December 19, 2005, until it purchased the medication in December 2008, Actavis Elizabeth LLC served as the contract manufacturer of Kadian for Alpharma.  Actavis Elizabeth LLC held the NDA for Kadian from 2008 to 2013.  Actavis Elizabeth LLC was also the holder of ANDAs for the following Schedule II opioid products: oxycodone/acetaminophen; homatropine methylbromide/hydrocodone bitartrate; morphine sulfate capsule; morphine sulfate tablet; oxycodone/hydrochloride tablet; oxycodone/ibuprofen; and

4

oxymorphone tablet. Actavis Elizabeth LLC was sold to Teva Pharmaceutical Industries Ltd. as part of Allergan plc's 2016 sale of its generic businesses to Teva.

13.     Defendant Actavis Totowa LLC is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey. Actavis Totowa LLC has held the ANDAs for the following Schedule II opioid products: oxycodone/acetaminophen; homatropine methylbromide; oxycodone/hydrochloride.

14.     Defendant Actavis LLC is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey. Defendants Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, and Actavis Totowa LLC were all direct subsidiaries of Actavis LLC, which was an indirect subsidiary of defendant Watson Laboratories, Inc. Watson Laboratories, Inc., in turn, was a direct subsidiary of Actavis, Inc. (n/k/a Allergan Finance, LLC). Actavis LLC was sold to Teva Pharmaceutical Industries Ltd. as part of Allergan plc's 2016 sale of its generic businesses to Teva.

15.     Defendant Actavis Laboratories FL, Inc. (f/k/a Watson Laboratories, Inc.-Florida) is a Florida limited liability company with its principal place of business in Davie, Florida. Actavis Laboratories FL, Inc. was a Norco ANDA holder in 2015 and was the ANDA holder of the following Schedule II opioid products: hydrocodone/acetaminophen; hydrocodone/ibuprofen; oxycodone/aspirin; and hydromorphone tablet. Actavis Laboratories FL, Inc. was sold to Teva Pharmaceutical Industries Ltd. as part of Allergan plc's 2016 sale of its generic businesses to Teva. Prior to the sale, Actavis Laboratories FL, Inc. was a direct subsidiary of Andrx Corporation, which was a direct subsidiary of Actavis, Inc.. (n/k/a Allergan Finance, LLC). Andrx Corporation was transferred to Teva as part of the 2016 sale.

16.     Each of these defendants and entities currently is or was previously owned by Defendant

Allergan plc, which uses them to market and sell its drugs in the United States.  Collectively, these defendants and entities, and their DEA registrant subsidiaries and affiliates which manufacture, promote, distribute, and sell prescription opioids, are referred to as "Actavis."

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in it.

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs..

## THE OPIOID EPIDEMIC AND DECEDENT NICK MOON

19.     Plaintiffs incorporate by reference the above paragraphs of this Complaint as though fully set out herein.

20.     Opioid drugs such as Oxycodone are opiate-based pain relievers and are classified by the United States Drug Enforcement Administration as schedule II controlled substances with a high risk of addiction, dependence, and abuse with the potential to lead to overdose and death.

21.     The United States of America and the State of Kansas are within an opioid epidemic, with the rampant use and abuse of highly addictive prescription opioid medications on the rise for many years.

22.     According to the Centers for Disease Control and Prevention (CDC), about 61 percent of the 47,055 lives lost in 2014 were attributed to opioids, such as heroin and prescription opioid medications.

23.     The reckless prescription of opioid pain medications has contributed to an opioid epidemic in Kansas, causing significant danger to patients and the general public, as well as an enormous burden on the State of Kansas.

24.     By 2014, nearly two million Americans were either abusing opioid medications or were

dependent on opioids.[2]  According to the United States Centers for Disease Control and Prevention

("CDC"), opioids have created a "public health epidemic" as of 2016.[3]

25.     It is due to the actions of the pharmaceutical industry, as well as medical providers such as the

defendants, that the opioid epidemic was created and has spiraled out of control.

26.     In 2012, it is estimated that 2.1 million people in the United States suffered from substances

use disorders related to prescription opioid pain relievers.[4]

27.     Deaths from prescription opioids have quadrupled since 1999.  From 2000 to 2014 nearly

500,000 people died from such overdoses.  Seventy-eight Americans die everyday from opioid

overdoses.[5]

28.     Kansas has suffered and continues to suffer an increased epidemic of opioid and heroin use.  It

is due to the actions such as the defendants herein that this epidemic continues to grow and ruin or

end the lives of many Kansans every year.

29.     From August 2016 to December 2017, Decedent Nick Moon was prescribed escalating opiate

doses, moving from Norco 5mg/6 times a day to Norco 7.5mg/6 times a day, to Norco 10mg/6times a

day and finally to Oxycontin 15mg/6 times a day.  He also received the benzodiazepine Lorazepam

during this timeframe.  All of these prescriptions were ACTAVIS products.

30.     On December 10, 2017, Nick passed away due to mixed drug toxicity as a result of the his

ACTAVIS prescriptions.

31.     Plaintiffs causes of action herein were not reasonably ascertainable until Nick's death on

---

[2] CDC, Injury Prevention & Control: Opioid Overdose, Prescription Opioids. Available at
http://www.cdc.gov/drugoverdose/opioids/prescribed.html (accessed February 17th, 2017).
[3] CDC, *Examining the Growing Problems of Prescription Drug and Heroin Abuse*, (Apr. 29, 2014),
http://www.cdc.gov/washington/testimony/2014/ts0140429.htm (accessed February 17th, 2017).
[4] Substance Abuse and Mental Health Services Administration, *Results from the 2012 National Survey on Drug Use and Health: Summary of National Findings*, NSDUH Series H- 46, HHS Publication No. (SMA) 13-4795. Rockville, MD: Substance Abuse and Mental Health Services Administration, 2013.
[5] CDC, Injury Prevention & Control: Opioid Overdose, Understanding the Epidemic, *supra*.

December 10, 2017.

### Count I – Negligence – All Defendants

32.     Plaintiffs incorporate by reference the above paragraphs of their Complaint as though fully set out herein.

33.     Federal and State regulations require ACTAVIS to track suspicious orders and notify law enforcement if there are orders which they suspect are misusing their product.

34.     ACTAVIS negligently allowed its products Hydrocodone, Oxycodone and Lorazepam to be prescribed irresponsibly to individuals such as Decedent Nick Moon.

35.     As a direct result of the inaction of ACTVAVIS, inappropriate quantities of Oxycodone, Hydrocodone and Lorazepam were prescribed to Decedent Nick Moon.

36.     ACTAVIS' improper actions placed profits over the welfare of the general public, including the plaintiffs herein.

37.     ACTAVIS breached its duty by failing to take appropriate action to stop its products, Oxycodone, Hydrocodone and Lorazepam from being inappropriately prescribed for fraudulent and illegal purposes, such as the prescriptions given to the plaintiff herein; by failing to maintain effective controls against prescriptions which weren't for legitimate medical purposes; failing to design, implement, and operate a system to disclose suspicious orders of controlled substances such as Oxycodone and Hydrocodone as required by regulations; and/or by failing to establish, implement, and follow an Oxycodone and Hydrocodone abuse and diversion detection program consisting of internal procedures designed to identify potential suspicious orders and/or prescriptions.

38.     As a direct and proximate result of ACTAVIS'S departure and/or departures from prevailing professional standard(s) of care, Nick Moon experienced pecuniary damages, including, but not limited to, damages related to his medical care, treatment and services as well as loss of

wages, income, benefits, and earning capacity.

39.     As a direct and proximate result of ACTAVIS'S departure and/or departures from prevailing professional standard(s) of care, Nick Moon experienced non-pecuniary damages, including, but not limited to, pain, suffering, disabilities, disfigurement, mental anguish, distress, humiliation, loss of enjoyment of life and death.

40.     As a direct and proximate result of ACTAVIS'S departure and/or departures from prevailing professional standard(s) of care, Nick Moon experienced an inability to provide *Wentling* services he previously provided to his family.

41.     As a direct and proximate result of ACTAVIS'S departure and/or departures from prevailing professional standard(s) of care, Nick Moon died.

42.     As a direct and proximate result of ACTAVIS'S departure and/or departures from prevailing professional standard(s) of care pursuant to K.S.A. 60-1901, *et seq.,* Plaintiffs, as the heirs at law of Nick Moon, sustained pecuniary damages, including, but not limited to, loss of Nick's earnings, services, support, care, training, guidance, education, attention, advice, counsel and protection as well as *Wentling* damages, funeral expenses, and expenses for Nick Moon's care.

43.     As a direct and proximate result of ACTAVIS'S departure and/or departures from prevailing professional standard(s) of care, pursuant to K.S.A. 60-1901, *et seq.,* Plaintiffs, as the heirs at law of Nick Moon, sustained non-pecuniary damages, including, but not limited to, mental anguish, suffering, bereavement and loss of services, support, society, comfort, companionship, care, attention, guidance, advice, counsel, consortium, and complete family.

        WHEREFORE, Plaintiffs pray for judgment against Defendants for such sums that are fair and reasonable for the injuries and damages sustained, for Plaintiffs' costs and expenses herein

incurred and expended, and for any such other and further relief the Court deems just and proper.

## Count II – Loss of Consortium – All Defendants

44.     Plaintiffs incorporate by reference the above paragraphs of their Complaint as though fully set out herein.

45.     At the times of the negligent acts and omissions on the part of Defendants as complained of herein and at all time relevant herein, Nick Moon was lawfully married to Dominque Moon.

46.     As the wife of Nick Moon, Dominque Moon was entitled to receive Nick Moon's support, services, companionship, comfort, instruction, guidance, counsel, training and love that normally would be afforded by a husband to his wife.

47.     As a direct and proximate result of the negligence and carelessness on the part of Defendants in causing the injuries and damages to Nick Moon prior to his death, Dominque Moon was deprived of Nick Moon's support, services, companionship, comfort, instruction, guidance, counsel, training and love that normally would be afforded by a husband to his wife.

    WHEREFORE, Plaintiffs pray for judgment against Defendants for such sums that are fair and reasonable for the injuries and damages sustained, for Plaintiffs' costs and expenses herein incurred and expended, and for any such other and further relief the Court deems just and proper.

## Count III – Wrongful Death – All Defendants

48.     Plaintiffs incorporate by reference the above paragraphs of their Complaint as though fully set out herein.

49.     Pursuant to K.S.A. 60-1901, *et seq.,* Plaintiffs allege that Defendants failed to act in the manner necessary to ensure that Nick Moon's medical needs were properly satisfied. Nick Moon was the victim of Defendants' acts and omissions and consequently died as a result.

50.     As a result of the wrongful death of Nick Moon, his heirs at law have sustained pecuniary

damages, which include, but are not limited to, expenses for the health care and treatment provided to Nick, the loss of Nick Moon's income in the past and future, expenses of the funeral and burial of Nick, and *Wentling* damages.

51.     As a result of the wrongful death of Nick Moon, his heirs at law have sustained non-pecuniary damages based upon, among other things, mental anguish, suffering, bereavement and loss of services, support, society comfort, companionship, care, attention, guidance, advice, counsel, consortium, and complete family.

        WHEREFORE, Plaintiffs pray for judgment against Defendants for such sums that are fair and reasonable for the injuries and damages sustained, for Plaintiffs' costs and expenses herein incurred and expended, and for any such other and further relief the Court deems just and proper.

## Count IV – Survival Action – All Defendants

52.     Plaintiffs incorporate by reference the above paragraphs of their Petition for Damages as though fully set out herein.

53.     As a direct and proximate result of Defendants' negligence, as described in preceding paragraphs, Nick Moon sustained pecuniary and non-pecuniary damages for which claim is made by the Administrator of her Estate, Plaintiff Brian Bina.

54.     Between the time of Defendants' negligence, as described in preceding paragraphs, and the time of Nick Moon's death, Nick Moon sustained injuries and damages, including, but not limited to, physical and emotional pain, mental distress, pain and suffering, which were a direct proximate result of Defendants' negligence.

        WHEREFORE, Plaintiffs pray for judgment against Defendants for such sums that are fair and reasonable for the injuries and damages sustained, for Plaintiffs' costs and expenses herein incurred and expended, and for any such other and further relief the Court deems just and proper.

11

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all issues herein.

Dated:  December 9, 2019                    Respectfully submitted,

/s/ Christopher L. Schnieders
Christopher L. Schnieders, KS # 22434
**NAPOLI SHKOLNIK PLLC**
6731 W. 121st Street, Suite 201
Overland Park, Kansas  66209
Telephone: 913-246-3860
Facsimile: 913-312-5841
Email: cschnieders@napolilaw.com

***Attorneys for Plaintiffs***